IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| ROGER BERNARD WILLIAMS, | : |
| | : |
| Plaintiff, | : |
| | : |
| VS. | : |
| | : 7:10-CV-89 (HL) |
| MICHAEL J. ASTRUE, | : |
| Commissioner of Social Security, | : |
| | : |
| Defendant. | : |

## RECOMMENDATION

Plaintiff herein filed this Social Security appeal on August 31, 2010, challenging the Commissioner's final decision denying his application for disability benefits, finding him not disabled within the meaning of the Social Security Act and Regulations. (Doc. 2). All administrative remedies have been exhausted.

## LEGAL STANDARDS

In reviewing the final decision of the Commissioner, this Court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983); *Hoffman v. Astrue*, 259 Fed. Appx. 213, 216 (11th Cir. 2007). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

In reviewing the ALJ's decision for support by substantial evidence, this Court may not

reweigh the evidence or substitute its judgment for that of the Commissioner. "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. "In contrast, the [Commissioner's] conclusions of law are not presumed valid. . . . The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

*Administrative Proceedings*

Plaintiff filed applications for Supplemental Security Income benefits on June 10, 2006 and for disability insurance benefits on July 3, 2006. (Tr. 135-37, 140). His claims were denied initially and upon reconsideration. (Tr. 67-75; 77-83). A hearing was held before an Administrative Law Judge ("ALJ") in Atlanta, Georgia on March 10, 2009. (Tr. 11; 108). Thereafter, in a hearing decision dated April 16, 2009, the ALJ determined that Plaintiff was not disabled. (Tr. 11-21). The Appeals Council subsequently denied review and the ALJ's decision thereby became the final decision of the Commissioner. (Tr. 1-5).

*Statement of Facts and Evidence*

The Plaintiff was forty-six (46) years of age at the time of the hearing before the ALJ, and alleged disability since May 25, 2006, due to back problems, numbness in his hands, and bowel problems. (Tr. 28, 159). Plaintiff completed high school and some technical school, and has past relevant work experience as a cook. (Tr. 19, 34, 56).

As determined by the ALJ, Plaintiff suffers from the following severe impairments: post cervical diskectomy with associated chronic back pain, depression, and asthma by history. (Tr. 14). The ALJ found that Plaintiff did not have an impairment or combination thereof that met or

medically equaled a listed impairment, and he remained capable of performing a limited range of light work as follows:

> [T]he claimant has the residual functional capacity to lift and carry 15 pounds occasionally, lesser amounts more frequently; engage in work that would afford an opportunity to change positions among sitting, standing, and walking; work that would not expose the claimant to hazards such as unprotected heights and moving machinery; and work that induces no more than mild to moderate stress.

(Tr. 16). Although Plaintiff could not return to his past relevant work, the ALJ considered the Plaintiff's age, education, work experience, and residual functional capacity, and applied the Medical-Vocational Guidelines to determine that Plaintiff remained capable of performing other jobs that existed in significant numbers in the national economy, and thus, was not disabled. (Tr. 19-20).

## DISCUSSION

Plaintiff alleges that the ALJ erred by failing to include all of Plaintiff's mental health limitations in Plaintiff's Residual Functional Capacity ("RFC"). (Doc. 13). The ALJ determined that, based on the record, Plaintiff's only mental health limitation is that he can only perform work which induces no more than mild to moderate stress. (Tr. 16). Plaintiff states that this is an error because the record indicates that Plaintiff has several mental health limitations as outlined by Dr. Elliot in a medical assessment. (Doc. 13).

A claimant's RFC is "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). The determination of the RFC is an administrative assessment based on all the evidence of how Plaintiff's impairments and related symptoms affect his ability to perform work-related activities. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The regulations state that the final responsibility for assessing a claimant's RFC rests with the ALJ,

based on all the evidence in the record. *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a)(3), 404.1546(c), 416.927(e)(2), 416.945(a)(3), 416.946(c).  Relevant evidence includes medical reports from treating and examining sources, medical assessments, and descriptions and observations of a claimant's limitations by the claimant, family, neighbors, friends, or other persons. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

When deciding the evidence, "[t]he testimony of the treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).  The Commissioner's regulations also state that more weight should be given to opinions from treating sources because they can provide a detailed look at the claimant's impairments.  20 C.F.R. § 404.1527(d)(2).  "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440.  "Good cause" as to why the Commissioner did not rely on the treating source's opinion can exist when the physician's opinion was not supported by the record evidence, the evidence supported a contradictory finding, or the physician's opinion was conclusory or inconsistent with the physician's own medical records. *Id.*

In determining the severity of Plaintiff's mental impairments, the ALJ should rely on medical evidence that indicates what the Plaintiff is capable of doing in the work place despite the impairments.  The medical evidence should show Plaintiff's ability to "understand, to carry out, and remember instructions, and to respond appropriately to supervision, coworkers, and work pressures" despite the impairments.  20 C.F.R. § 404.1513(c).

Herein, when determining the RFC, the ALJ found that "the evidence does not really support the alleged severity" of Plaintiff's mental state.  (Tr. 18).  The ALJ stated that the "medical record shows no or minimal mental limitations."  (Tr. 18).  Further, the ALJ determined that Dr. Elliot's

4

opinion of Plaintiff's mental limitations was not supported by objective medical evidence. (Tr. 19).

Dr. Elliot submitted a medical assessment regarding Plaintiff's mental ability to do work-related activities. (Tr. 1203-05). In the assessment, Dr. Elliot opined that Plaintiff's ability to function is seriously limited in the areas of reliability; relating to co-workers; dealing with public; using judgment; interacting with supervisors; functioning independently; understanding, remembering, and carrying out detailed and simple job instructions; maintaining personal appearance; and behaving in an emotionally stable manner. (Tr. 1203-05). Further, Dr. Elliot stated that Plaintiff has no useful ability to function in the areas of dealing with work stress; maintaining concentration; understanding, remembering, and carrying out complex job instructions; and relating predictably in social situations. (Tr. 1203-05). Dr. Elliot did find that Plaintiff has the ability to satisfactorily follow rules. (Tr. 1203). Dr. Elliot also submitted a medical evaluation where he opined that Plaintiff had many characteristics of depressive syndrome, and had marked limitations in daily living; social functioning; and concentration, persistence, or pace. (Tr. 1189-91). Dr. Elliot stated that Plaintiff had experienced three (3) episodes of decompensation. (Tr. 1191).

The ALJ discredited Dr. Elliot's assessments of Plaintiff because the assessments were not supported by the objective medical evidence. (Tr. 19). The medical records indicate that Plaintiff has a history of depression and a questionable history of panic attacks. (Tr. 811). A mini-mental state examination was administered to Plaintiff in 2006 by Dr. P. Edwards-Conrad. (Tr. 861). Plaintiff scored a 28/30, and an individual who scores 21 or above is determined to have only "mild" cognitive impairment. (Tr. 861). During the examination, Dr. Edwards-Conrad observed that Plaintiff was alert, "oriented x3", and had good memory. (Tr. 860).

In September of 2006, Plaintiff was diagnosed with major depressive disorder, moderate, recurrent by Dr. Paresh Thanki. (Tr. 846). Dr. Thanki found Plaintiff's "[s]peech was rapid at times,

5

but relevant and goal-directed." (Tr. 846). Further, Plaintiff denied auditory and visual hallucinations, and his cognition was grossly intact. (Tr. 846). Plaintiff's concentration, attention, insight, and judgment were fair. (Tr. 846). In December of 2006, Plaintiff's speech was relevant and goal-directed. (Tr. 936). Dr. Thanki also observed that Plaintiff was appropriately groomed during his appointments. (Tr. 846, 865, 905, 906).

Plaintiff alleges that the treatment notes from Grady Hospital show Plaintiff's mental limitations; however, the records from Grady indicate Plaintiff had a normal mood and judgment, and was oriented "x3" or "x4" when he was seen on several occasions for asthma exacerbation. (Tr. 51, 1272, 1321, 1324). The psychiatry outpatient notes indicate that Plaintiff suffers from depression due to stress in his life, but at the appointments Plaintiff was oriented to person, situation, and time; had appropriate behavior; and his cognition was intact. (Tr. 1297-99, 1304). In September of 2008, Plaintiff's appearance was neat; he had fair interaction, judgment, and memory; his mood and affect were appropriate; he had normal speech; he was cooperative; and he had appropriate thought content. (Tr. 1297). During his November and December 2008 appointments, Plaintiff's interaction was good, and all other mental statuses remained the same as September 2008. (Tr. 1298, 1299, 1304). The progress notes also indicate that Plaintiff's depression is stable, or stable with medication. (Tr. 1297-99, 1304). It appears Plaintiff visited the Emergency Room for depression and suicidal ideation in January of 2009; however, the medical records do not indicate any limitations on Plaintiff's ability to do work-related activities. (Tr. 1306).

The ALJ also determined that Plaintiff's "own report indicates no limitation in social functioning or concentration, and he is capable of completing his activities of daily living." (Tr. 19). Plaintiff's disability report states that his illnesses, injuries, or conditions do not affect his ability to care for his personal needs, and that he can take care of his personal needs. (Tr. 189, 197). Plaintiff

did state that he has lost everything since he became disabled. (Tr. 197). However, in Plaintiff's Function Report, he states that he cooks complete meals, cleans, does laundry, irons, and mows. (Tr. 852). Plaintiff also leaves the his house often, spends time with people, and talks on the telephone. (Tr. 853-54).

The ALJ's assessment of Plaintiff's RFC must be based on all relevant evidence, and the opinions of medical sources are one consideration factored together with the rest of the relevant evidence. 20 C.F.R. § 404.1545; 20 C.F.R. § 404.1527; *see also* SSR 96-5p ("A medical source statement is evidence that is submitted to the SSA by an individual's medical source reflecting the source's opinion based on his or her knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)."). As seen above, the ALJ determined that the opinion of Dr. Elliot was not supported by objective medical evidence, and thus the alleged limitations were not included in Plaintiff's RFC. (Tr. 19). When determining Plaintiff's RFC, the ALJ analyzed the objective medical evidence, the opinions of medical sources, and Plaintiff's own statements, and included limitations that he found to be consistent with the record as a whole. The ALJ's RFC assessment was based on substantial evidence; thus, the ALJ did not err in his determination of Plaintiff's limitations.

## CONCLUSION

As the Commissioner's final decision in this matter is supported by substantial evidence and was reached through a proper application of the legal standards, it is the recommendation of the undersigned that the Commissioner's decision be **AFFIRMED** pursuant to Sentence Four of § 405(g). Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable Hugh Lawson, United States District Judge, WITHIN

FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

**SO RECOMMENDED** this 2nd day of December, 2011.

s/ ***THOMAS Q. LANGSTAFF***

**UNITED STATES MAGISTRATE JUDGE**

llf